## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## Wheeling

**MICHAEL DAVID WATLEY,**

        Plaintiff,

v.                                           Civil Action No. 5:24-CV-187
                                                                  Judge Bailey

**DRAKE KOWCHECK,** Correctional
Officer, **WILLIAM KOPPEL,** Correctional
Officer, and **MATTHEW COX,**
Correctional Officer**,**

        Defendants.

## REPORT AND RECOMMENDATION

### I. Background

The plaintiff initiated this action on September 18, 2024, by filing a Complaint asserting claims for violations of his constitutional rights pursuant to ***Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics***, 403 U.S. 388 (1971). [Doc. 1]. Plaintiff is a federal prisoner currently incarcerated at USP Hazelton in Bruceton Mills, West Virginia, and is asserting claims against defendants for retaliation. This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned recommends the case be dismissed.

### II. The Complaint

In his Complaint, plaintiff alleges that each of the defendants retaliated against him. Plaintiff alleges that he requested to speak to a lieutenant and that defendants placed him "in a paper suit for six days, taking away his bedding, and denying Plaintiff's

1

request to speak to a L.T. while in solitary confinement." [Doc. 1-1 at 1]. He argues that retaliating against him for asking to speak to a higher-ranked officer was a violation of his First Amendment rights and that forcing him to wear a paper suit and taking away his bedding while in solitary confinement for six days was cruel and unusual punishment in violation of the Eighth Amendment. [Id.]. He alleges that defendant Koppel falsified an incident report to cover up these unconstitutional deprivations. [Id.]. He further alleges that "Correctional officer Matthew Cox actions were deliberate as he admitted to the Plaintiff that he was not placed in paper for actions given in a false Incident Report." [Id.]. For relief, plaintiff seeks damages for mental anguish, anxiety, difficulty sleeping, chronic back pain, and ongoing fear, as well as a declaration from the Court that defendants violated his Constitutional rights. [Doc. 1 at 9].

### III. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), a court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. **Neitzke v. Williams**, 490 U.S. 319, 325 (1989). However, the court must read *pro se* allegations in a liberal fashion. **Haines v. Kerner**, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. *See*

*Neitzke* at 328.  Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless."  ***Denton v. Hernandez***, 504 U.S. 25, 32 (1992).  This includes claims in which the plaintiff has little or no chance of success.  See ***Estelle v. Gamble***, 429 U.S. 97, 106 (1976).

The plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings.  ***Estelle***, 429 U.S. at 106; ***Haines v. Kerner***, 404 U.S. 519, 520-1 (1972) (per curiam); ***Erikson v. Pardus***, 551 U.S. 89, 94 (2007); ***Loe v. Armistead***, 582 F.2d 1291 (4th Cir. 1978); ***Gordon v. Leeke***, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, ***Haines***, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal.

## IV. Analysis

In ***Bivens,*** the Supreme Court first recognized an implied cause of action for money damages under the Fourth Amendment against federal agents who allegedly entered the plaintiff's home without a warrant, handcuffed him in front of his family, conducted a warrantless search, and threatened to arrest his entire family while arresting him for narcotics violations.  ***Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics***, 403 U.S. 388, 389 (1971).  In the decade following ***Bivens***, the Court twice more recognized implied causes of action for constitutional violations by federal officials. In ***Davis v. Passman***, 442 U.S. 228 (1979), the Court held that the Due Process Clause of the Fifth Amendment provided a damages remedy for a former congressional staffer's

---

[1] ***Id.*** at 327.

sex-discrimination claim. In *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment provided a damages remedy for a federal prisoner's inadequate-care claim. Outside of these contexts, however, the Supreme Court has consistently refused to extend *Bivens* to any new context, and over the past 42 years, it has declined twelve (12) times to approve an implied damages remedy for other alleged constitutional violations. See *Mitchell v. Skinner*, 2023 WL 11264898, at *1 (N.D. W.Va. Feb. 27, 2023) (collecting authority).

Most recently, the Court refused to recognize a *Bivens*-type remedy in *Egbert v. Boule*, 596 U.S. 482 (2022). While not overruling *Bivens*, the *Egbert* decision nonetheless further restricted the implied cause of action, and as the Fourth Circuit declared, has "all but closed the door on *Bivens* remedies." *Dyer v. Smith*, 56 F.4th 271, 273 (4th Cir. Dec. 29, 2022).  In *Egbert*, the Court emphasized once again that recognizing a *Bivens* cause of action is "a disfavored judicial activity." *Egbert* at 491 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) and *Hernández v. Mesa*, 589 U.S. 93, 101 (2020)). The Court also discussed the well-established two-step inquiry which courts are to use for determining whether a *Bivens* claim may proceed:

> First, we ask whether the case presents "a new *Bivens* context" - i.e., is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action.  Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." If there is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a *Bivens* remedy.

*Egbert* at 492 (internal citations omitted). See *Ziglar* at 122; *Hernández* at 102 (internal citations omitted).

4

This two-step test, however, was "significantly modified" by the *Egbert* court. *Mitchell* at *3. The Court explained that although its previous cases "describe two steps, these steps often revolve into a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert* at 492. In this respect, "[e]ven a single sound reason to defer to Congress" is enough to require a court to refrain from creating such a remedy." *Id*. at 491–492.

As this Court has observed, however, in cases decided by the Fourth Circuit since *Egbert*, the Court has nonetheless continued to follow the "two-step new context test." *Mitchell,* at *4 (citing *Tate v. Harmon,* 54 F.4th 839 (4th Cir. 2022) and *Dyer v. Smith*, 56 F.4th 271 (4th Cir. 2022)). *See also Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. June 6, 2022); *Bulger v. Hurwitz*, 64 F.4th 127, 138 (4th Cir. March 3, 2023). Accordingly, this Court must determine whether the case now before it: (1) presents a new *Bivens* context, which is meaningfully different from the three cases in which the Supreme Court has implied a damages action; and (2) if the claim does arise in such a new context, whether there are any special factors that counsel hesitation about granting the extension of *Bivens*. *Bulger* at 137 (citation omitted).

A.   **Plaintiff's claims present new *Bivens* contexts.**

Turning first to plaintiff's First Amendment claim, the Court must decide whether the proffered cause of action presents a "new context" under *Bivens* in that it is "different in [any] meaningful way" from the three prior cases in which the Court has provided a *Bivens* remedy. *Ziglar* at 139; *Tun-Cos v. Perrotte*, 922 F.3d 514, 522–23 (4th Cir. 2019). Clearly, in this case, the plaintiff's claim that defendants have violated his First Amendment rights by retaliating against him for asking to speak to a lieutenant is in no

5

way similar to those of the Supreme Court's ***Bivens*** trilogy, and the "new context" inquiry is thus easily satisfied. Additionally, in this respect, the undersigned notes that both the Supreme Court and the Fourth Circuit have ruled that a prisoner's First Amendment retaliation claim presents a new ***Bivens*** context. *See* ***Egbert*** at 499 ("[T]here is no ***Bivens*** action for First Amendment retaliation."); ***Dyer*** at 278 (agreeing with district court that a First Amendment retaliation claim arose in a new context); ***Earle v. Shreves***, 990 F.3d 774,779 (4th Cir. 2021) (an inmate's First Amendment retaliation claim presents a new ***Bivens*** context). This Court has likewise previously determined that a prisoner's First Amendment retaliation claim, where the plaintiff alleged he was being threatened for filing grievances, presented a new context under ***Bivens***. *See* ***Milliron v. K. Brown,*** 2021 WL 6062061, at *6 (N.D. W.Va. December 1, 2021).

Likewise, plaintiff's Eighth amendment claim for cruel and unusual punishment for being made to wear a paper suit and placed in solitary confinement without bedding for six days is clearly a "new context." Although ***Carlson*** allowed for a damages remedy for an Eighth Amendment claim against prison officials, ***Carlson*** concerned deliberate indifference to medical needs after the prisoner suffered an asthma attack. "[T]he Supreme Court has made clear that courts should not interpret ***Carlson*** to apply outside the precise context at issue in that case, noting that even claims challenging the adequacy of medical care may involve the same 'right and . . . mechanism of injury' as in ***Carlson*** but still present 'different' contexts." ***Bulger***, 62 F.4th at 138 (citation omitted). Accordingly, the undersigned finds that the plaintiff's First Amendment retaliation claim and Eighth Amendment claim are new contexts for purposes of the two-step ***Bivens*** inquiry.

**B.      Special factors counsel against extending *Bivens*.**

Having determined that this case presents a new context, the next inquiry for the Court is "whether there are any special factors that counsel hesitation about granting the extension of *Bivens*." *Tate* at 844 (citing *Hernandez* at 102).  In this regard, the Supreme Court has further directed that the "special factors" inquiry must center on "separation-of-powers principles" and "requires that a court ask whether judicial intrusion into a given field is appropriate." *Bulger* at 137 (citing *Hernandez* at 94 and *Ziglar* at 135).  While the Supreme Court has not provided a comprehensive list of special factors, lower courts are instructed to "consider the risk of interfering with the authority of other branches" and to determine "whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," as well as "whether the Judiciary is well suited, absent congressional action, or instruction to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Tate*  at 845 (citing *Hernandez* at 102); *Dyer* at 278–79 (quoting *Ziglar* at 136).  If there is "reason to pause before applying *Bivens* in a new context or to a new class of defendants," the request to extend *Bivens* should be rejected.  *Hernandez* at 102*.*

Courts must also look at whether there is an alternative remedial structure available in a case.  *Ziglar* at 122.  The Supreme Court has instructed that "a court may not fashion a *Bivens* remedy if Congress has already provided, or has authorized the Executive to provide, an 'alternative remedial structure.'" *Egbert* at 493 (internal citations omitted).  When there is an alternative remedial structure in place, that fact alone, "like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause

7

of action." *Id.* Furthermore, it is of no matter that the "existing remedies do not provide complete relief.'" *Id.* (internal citations omitted).

The Supreme Court has ruled that *Bivens* relief is "unavailable" for federal prisoners who can, "among other options, file grievances through an Administrative Remedies Program" (ARP) to pursue their claims. *Id.* at 497 (citing *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 74 (2001)). In this regard, the Supreme Court has long acknowledged that: "So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." *Malesko* at 69 (internal citations omitted). Moreover, as this Court recently observed with respect to *Malesko*: "This holding alone would appear to bar any *Bivens* type action brought by a federal prisoner." *Mitchell* at *6.

The Fourth Circuit has also consistently ruled that "the existence of an alternative remedial structure for prisoners, even if it is not as effective as a suit for damages, weighs heavily against recognizing a new *Bivens* cause of action." *Nellson v. Doe*, 2023 WL 3336689, at *5 (4th Cir. 2023) (unpublished) (citing *Bulger* at 140–141); *see also Tate* at 847–48; *Earle v. Shreves*, 990 F.3d 774,780 (4th Cir. 2021). Finally, this Court, has found that the alternative remedies available to a federal prisoner "strongly caution against an expansion of *Bivens* into a new context." *Milliron* at *7; *see also Scates v. Craddock*, 2019 WL 6462846, at *8 (N.D. W.Va. July 26, 2019), *report and recommendation adopted,* 2019 WL 4200862 (N.D. W.Va. Sept. 5, 2019) ("[M]any courts have explicitly recognized that the BOP's administrative remedy program is an alternative process that precludes a *Bivens* remedy.") (collecting authority).

8

In this case, plaintiff's Complaint and attached exhibits demonstrate that administrative remedies were available to him and that he pursued such remedies. While the existence of alternative remedies alone would be sufficient grounds to preclude the extension of **Bivens** in this case, there are nonetheless other special factors counseling hesitation here.  In this regard, the Supreme Court has directed that other factors to be considered in the special factors analysis include "'economic and governmental concerns," along with "administrative costs," and the "impact on governmental operations systemwide." **Ziglar** at 134, 136.  As this Court has further found, these special factors might encompass, among other considerations, the burdens on both the government and its employees, as well as whether Congress has previously enacted legislation in the area, indicating that the judiciary should refrain from interfering. **Milliron** at *6 (citing **Ziglar** at 132–43).  The Supreme Court has expressly stated that "[u]nsurprisingly, Congress is 'far more competent than the Judiciary' to weigh such policy considerations.  And the Judiciary's authority to do so at all is, at best, uncertain." **Egbert** at 491 (internal citations omitted).  This Court has recognized that the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government, are particularly high in the prison setting:

> The burdens on the government, the prison administration, and on the individual employees, who must defend claims often filed without merit and simply for harassment, are great.  Specifically, being named in a frivolous lawsuit subjecting the employee to personal liability may cause financial problems for defendants and their families who then face difficulties refinancing or taking out home loans or other credit due to being involved in a pending legal matter.

**Crisantos v. Sims**, 2023 WL 3115686, at *6, (N.D. W. Va. Feb. 27, 2023).  Additionally, the harmful effect that the creation of a **Bivens** remedy could have on the discharge of

9

official duties must be taken into account, as officials "who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis." **Id**. (quoting **Ziglar** at 145).  Evaluating these impacts "to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government" is a responsibility best left for Congress and not the judiciary. **Id**. at 134.

These concerns are especially significant with respect to retaliation claims. Certainly, expanding **Bivens** to allow First Amendment retaliation claims by prisoners would result in an increased number of such suits, in addition to the increase in the systemwide costs and impacts enumerated above. The Supreme Court has also recognized that "a plaintiff can turn practically any adverse action into grounds for a retaliation claim," thereby adding to the substantial social costs already associated with recognizing new **Bivens** claims. **Egbert** at 499.  Likewise, to the extent the plaintiff may be claiming that any particular disciplinary action, or his transfer to another housing unit, was retaliatory, the Fourth Circuit has long cautioned that such claims "intersect with the statutory scheme delegating authority" to the Bureau of Prisons over, among other areas, housing decisions and discipline, and that extending **Bivens** to retaliation claims in such instances could "lead to an intolerable level of judicial intrusion into an issue best left to corrections experts."  **Mays** at 205, quoting **Earle v. Shreves** at 780–81.

Finally, legislative action which suggests that Congress "does not want a damages remedy, is itself a factor counseling hesitation."  **Ziglar** at 148; see also **Egbert** at 493. Particularly in the prison context, the Fourth Circuit has observed that "Congress' decision not to include an individual capacity damages remedy in the Prison Litigation Reform Act

'speaks volumes and counsels strongly against judicial usurpation of the legislative function.'" **Nellson** at *5 (citing **Bulger** at 141).  Accordingly, because Congress has expressed a desire to prevent courts from interfering with BOP decisions and has been "conspicuously silent about creating a remedy for prisoners to obtain damages from individual officers, 'the existence of the ARP and PLRA counsel hesitation in extending Bivens to Appellant's claims.'" **Bulger** at 141. This Court has also previously recognized that "Congress's inaction and failure to provide a damage remedy, particularly where it has acted to enact sweeping reforms of prisoner litigation, suggest that an extension of a damages remedy for other types of mistreatment should not be judicially created." **Milliron** at *7 (citing **Ziglar** at 148).

Based on the foregoing, the undersigned finds that there are several special factors counselling hesitation in this case, and that accordingly, no **Bivens** remedy exists for the plaintiff's claims.

## V. Recommendation

For the reasons set forth above, the undersigned recommends that the plaintiff's case be **DISMISSED WITH PREJUDICE** for failure to state a claim.

The petitioner shall have **fourteen days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless

11

accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**: December 3, 2024.

/s/ *James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE